I'm Jonathan Pitt, and I represent Danaher Corporation and the Manufacturer Appellants, but will be arguing today on behalf of all appellants. This is a case about who the parties empowered to decide whether or not their dispute was subject to arbitration. This Court's precedent says that when the parties incorporate the American Arbitration Association rules, the AAA rules, into their agreement, they clearly and unmistakably delegate that decision to the arbitrator. And at least eight other circuits have said exactly the same thing. The agreement at issue here fits squarely within these holdings. The parties incorporated the AAA rules. AAA Rule 7 provides that, quote, the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement, or to the arbitrability of any claim or counterclaim. As this Court has held, the parties' incorporation of those rules into their agreement therefore means that the arbitrator must be the one to decide whether the arbitration clause covers this dispute. And that includes the question of whether or not any exceptions to that clause apply to this dispute. So that, in our view, is the fundamental and dispositive issue in the appeal, but the ---- Sotomayor, who before what? I'm sorry? Who before what? Correct. But that's the circuits that we may be in a minority, but we've got the Douglas Rule. Yeah, that's correct, Your Honor. Which is an exception from that framework. That the Douglas Rule is an exception, and as I believe the Kubala case recognized, it is a narrow exception and the only exception, really, to the rule about delegability. Judge Smith wrote both. So there's harmony. Of course, yes. And, Your Honor, our view is that the wholly groundless exception does not apply here. The wholly groundless exception applies under the Douglas case where there is no legitimate argument in favor of arbitration. We do not believe at all that that is the case here. The Kubala case also warned that the wholly groundless exception stated in Douglas must not be used as a way for a court to resolve arbitrability determinations that are more properly left to the arbitrator. So it's a narrow exception. The facts in Douglas, of course, were that the dispute there really had nothing to do with the agreement, could not be said of this one. Here, very clearly, this dispute arises out of and is related to the dealer agreements because the sole claim of injury that Archer makes is that their territories, which were provided for in the dealer agreements as alleged in their complaint, that their territories were either truncated or terminated. So I think this is a very different kind of case. But here we have this carve-out provision. Yes. For cases involving requests for injunctive relief? And that's what we have here, isn't it? Yes, it is. The carve-out here, first, I guess what I'll say is this Court has applied the Petrofac rule in circumstances where there have been arbitration clauses that have exceptions for injunctive relief. That has been done. The fact that there is an exception here does not somehow negate the Petrofac rule or cause it not to be applicable. And one of the cases that we... They claim that any time you put in the contract that this is American arbitration rules that regardless of what other provisions in the contract defining the scope of arbitration, that they're simply meaningless, that everything goes to the arbitrator. Well, they're not simply meaningless. In other words, that the inclusion of the American arbitration rules, a prescription that they would obtain, preempts whatever the parties may otherwise have agreed to. Well, I'm not sure I can answer the question in the abstract in terms of whatever else the parties have agreed to. But what I can say is that it doesn't render the rest of the clause meaningless. What it says is... Well, certainly your argument does, because as I read this agreement, as the district court read the agreement, it says, except for actions seeking injunctive relief and disputes, that any dispute, they're saying that there is going to be no arbitration where there is an act, if it's an action seeking injunctive relief and disputes relating to arbitration. So you don't get to the question of the content of the arbitration. Well, respectfully, you do, Your Honor, and the reason is this. All arbitration clauses have some form of limitation, whether that limitation is expressed as a, you know, limitation of scope by subject matter or an exception. There are cases, and I would point the Court to particularly the Ninth Circuit cases of... Well, let me pull you back away from the cases for a moment. I want to understand the force of the argument that you contend. It is that, in drafting such a provision, I cannot define the scope in a way that would prevent the question of scope going to the arbitrator if I am going to provide, which I ordinarily am going to do, that the rules of the American Arbitration Association apply. Well, the — as this Court has held, the citation of the AAA rules is clear. No, I'm just — no, I want to — stay with me. That — that is an argument that inclusion of the — of these — of a reference to the arbitration rules is preemptive of whatever else the parties may agree to in terms of what is to be arbitrated. So what the district court said essentially is the parties said that this is a matter not for arbitration period. There is no agreement to arbitrate these kinds of cases. And — but — but — but — but the — but other types of cases, the American rules of the Arbitration Association apply. So the force of your argument, it seems to me, is it's preemptive. Now, maybe — that may be so. The cases may say — say that. But I — I — I don't quite understand how you can escape the fact that — that is a — your argument is ultimately that that's a preemptive. It's the magic language. You put it in there, and everything goes to the arbitrator. Well, the question of arbitrability goes to the arbitrator because the arbitrator has to be presumed in those circumstances to be competent to make the arbitrability determination, given that the parties have expressed their clear and unmistakable intent that the arbitrator be the one to resolve arbitrability. In — in — in the clauses in all of these other cases that we've cited, and I'd be glad to give several examples of it, the — the arbitration clauses say that the AAA rules apply specifically to matters that are arbitrated. And the courts reviewing those clauses say it was the invocation, the incorporation of the AAA rules that shows who the parties wanted to make the assessment of whether or not the dispute did or did not fit into the exception. I would point the Court to the Brennan case in the Ninth Circuit, for example. But give us a case in a circuit that recognizes the holy groundless exception. Well, the — respectfully, the holy groundless exception is an exception to that rule, and if — Well, even if we agree with you, Petrofax suggests it was clear and unmistakable. You still then break that into two because of Douglas. So what case are you citing where the carve-out was in the delegation clause and it's in the Sixth, the Federal, or the Fifth? Well, I don't know that we have a case that is phrased exactly like that, but — but in — in this Court's decisions, the — in the Hendricks case, which we cited in our papers. Hendricks is unpublished. Yes, that's correct. And there's no mention of Douglas. I'm sorry? Like Crawford, there's no mention of Douglas. That's correct, Your Honor. So I'm — I'm looking for application of the holy groundless rule, yet you still prevail. When I read your brief, it seemed to me you made two factual arguments and three legal. One is you just say, well, it's boilerplate, overlook it. The gravamen is what you look for. Two was, well, it's there, but they didn't pursue it. They've somehow forfeited it. I didn't see case law supporting either of those arguments. Then you get the legal arguments. One is — and you may be right. Douglas may just be wrong. There's a pretty healthy split. We aren't at liberty to say that. Two, and this was the one that I was going to ask opposing counsel most about, is you suggest that even if there is a carve-out, hence some would go to courts, these cases have to go piecemeal. And I'd love your best case for that proposition. Sure. Right? Arbitrator decides scope as to any dispute that's not injunctive, but district courts would be getting the half that's injunctive. Is that what you were suggesting? And if so, what's the case that suggests supports that? Well, so first of all, what we're suggesting is that because it's the arbitrator that has at the outset to figure out whether or not the exception is even triggered, it's the arbitrator that's going to make the determination unless any suggestion is wholly groundless, again, a very narrow exception. It's going to be the arbitrator that makes the determination. Let's assume I'm in the wholly groundless. When I see a carve-out that says not actions, broad word actions, seeking injunctive relief, and he sought it, we're in the world of that. So if we're trying to decide why it would be wholly groundless to say that language doesn't apply, what's the argument? Well, if you're asking me to assume that wholly ground — that the argument is wholly groundless, obviously, we strongly disagree with that. But you — do you have a piecemeal argument there? What's the case that supports what you suggested? Well, if it's — if it's wholly groundless, then the court is going to be the entity that makes the determination as to whether or not the scope of the Arbitration Clause embraces the dispute, and the — you know, and the court will — will make what conclusion it reaches. We — we believe that, and I'll — I do have some cases on it, Your Honor. So cases that we've cited is, for example, in the Supreme Court in Moses H. Cohn, it held that relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement. We also cited the Dean Witter case, the Alfred case in this circuit, the Harvey v. Joyce case, and these are cases that say when it's necessary to preserve the party's right to arbitrate, piecemeal resolution is required. Now, on the wholly groundless point, Your Honor, I — you know, I hesitate to accept the suggestion that — that this would be wholly groundless. And I guess that's where I want you to go in the last few minutes, because we've acknowledged Petrofax and what it says, but there is Douglas. Yes. And this wholly groundless argument that I think you have, you don't want to — you don't want to make that argument. I'm sorry. You don't want to make an argument that your basis for claiming that everything should go to the arbitrator is not wholly groundless. Of course I want to make that argument, yes. All right. Let's hear it. And we've made that in our papers, and I'm delighted to make it now. All right. So we think that the correct reading of the clause is that — and the clause, to be clear, is it's an exception for, quote, action-seeking injunctive relief and disputes related to trademarks, trade secrets, or other intellectual property. That exception is preceded by what is recognized as classically broad arbitration language, all disputes arising out of or related to. So a classically broad arbitration clause with that exception. Our view is that in light of the broad arbitration language, in light of the presumption in favor of arbitrability, the correct reading of the exception is that action-seeking injunctive relief can be brought in court, but action-seeking damages must be arbitrated. The parties very clearly intended — And the suit here is not solely for injunctive relief, is it? No. We would argue it's not even for injunctive relief. All right. But even Archer describes its case as an action-seeking damages and injunctive relief. And in our view, what the parties meant and what that language means and must be interpreted to mean in light of the relevant presumption under Federal law is that if you — that a parallel action for injunctive relief can be brought before, during, or after an arbitration and the parties have the right to have that determined by a court — Only in aid of arbitration? No. Not only in aid of. They — but in action-seeking injunctive relief means an action seeking injunctive relief and nothing else. It doesn't mean — Yeah. It doesn't mean an action seeking tens of millions of dollars of damages onto which a perfunctory request for injunctive relief happens to be tacked on. And I think that the presumption would prohibit that kind of reading if the court were the right entity to be making the determination in the first place. So we think that our interpretation is the best one. All it has to be is a plausible one, given the Federal presumption. And we think we clearly meet that test. It clearly can't be wholly groundless such that petrifact would somehow be taken out of play. And so, again, our view is this dispute has to go to the arbitrator in the first instance to make the determination about whether or not the exception applies to this dispute. And that decision cannot be made by the court first because that's entirely circular. It's suggesting that first the court has to determine arbitrability, only to then, if it's arbitrable, send it to the arbitrator to determine arbitrability. And I see that my time is up, but I've reserved five minutes for rebuttal. Thanks. Good morning. Lou LeClair on behalf of Archer and White. There are three reasons that we believe that the well-reasoned opinion of Judge Gilstrap should be affirmed. First, I think this case is governed primarily by plain contract meaning. Everyone understands that arbitration is a matter of contract. And the most important thing is, what does the language of the contract mean? Here, the contract is clear. And for that reason, it not only prevents delegation, it not only ensures that there is no arbitration, it also meets the Douglas standard for all those reasons. What if the question is whether the lawsuit really is about intellectual property or trade secrets? There's some dispute about that. I think the best way to harmonize that, Your Honor, is that if the contract is plain on its face, not ambiguous, and doesn't require complex factual determinations, then it is determinable under the Douglas standard by the plain meaning of the contract. There might be. Pardon me. I think the carve-out on its face is clear enough. The difficulty that you've got to take that and look at the lawsuit, that issue, and see whether or not that falls within the meaning of trademark or trade secret or other intellectual property or whatever, unless you take the position that any lawsuit that incidentally seeks injunctive relief is not to be arbitrated. In other words, so many of the prayer for reliefs are going to be for things such as damages and such other relief as the court may find. In other words, there are generic pleas for equitable relief, et cetera. Complaints don't narrow themselves usually. I haven't seen this. I haven't looked at it. They were seeking no injunctive relief. I can have a suit, an antitrust suit, and I'm seeking damages, and I'm also seeking injunctive relief to ask the court to enjoin the defendant from dealing in this horizontal division of markets, whatever it might be. I've taken that as an example. So I'm seeking. That would be a dispute to be arbitrable, arguably, but I'm also seeking injunctive relief. I'll say it another way. No matter what the lawsuit is, if I've got a prayer in there for injunctive relief, does that mean that it's not covered? Absolutely. That is the choice of the drafter of this contract, which this language is very unusual. This is not typical language in an arbitration clause. It is very unusual in the way it is drafted. It specifically includes the exception, and the exception is not just to arbitrability. It's to delegation. The delegation doesn't occur. So I believe, to answer your question directly. Well, I can accept that, but my question is whether the inherent uncertainty still comes with the language that is within the carveout. I don't think there is any uncertainty, respectfully, Your Honor. Because I believe that if the action asserts injunctive relief, it is therefore not arbitrable. That's the language that is the plain meaning of the language. And that's why we believe that it is the correct interpretation, why the court should rule the way it ruled, and why it meets the Douglas standard. Because Douglas, groundless is an interesting word, but I think if you think about it in a contract term, it means nothing more than if the plain meaning of the contract language requires no arbitration, then there is no arbitration, and the court should so rule. If it is not clear or it requires complex factual determinations, then I think it may be sent to the arbitrator for determination. But this is not that case. I look at the complaint in this litigation and determine that quite clearly that it is a dispute seeking injunctive relief or one relating to trademarks, et cetera. That's all you have to do is look at the language of the complaint. Now, what they could do, and I think that— What is the language? What is the prayer for relief in the case? There is a prayer for both temporary and permanent injunctive relief. That's not the only relief being sought. No, no, no, of course not, Your Honor. I totally agree that we are seeking multiple forms of relief, and the question is—this is the nub of the issue. I understand. The question is, does the language mean— And your carve-out provision doesn't say where any part of the relief being sought is injunctive relief, then? It does not say that. It also doesn't say that if it seeks only injunctive relief, it's carved out. So my view is that the plain meaning of that clause is—it's so simple. You read the language. If the claim asserts injunctive relief, it is not arbitrable. I agree with you. You're presenting it as a simple matter, but as I read that, the carve-out carves out the whole. I mean, I don't know how much litigation is not going to ask for some kind of injunctive relief. You're leaving very little in there to be arbitrated on. And perhaps—and again, that may be why this shouldn't be sent to the arbitrator for determination, because it's not a broad arbitration clause. But under Douglas, all they have to do is make a plausible argument, and doesn't that defeat your contention that it's wholly groundless? It does not, Your Honor, respectfully, because the language is plain, clear, and unambiguous. It is—what they are doing, as we point out in the briefs, what they are doing is they're rewriting—they want to rewrite the arbitration clause, and you can't do that. What the Court has to do is to give it its plain meaning, and it should not—I mean, if we're going to— All anybody has to do is throw in a claim for injunctive relief, and then you defeat the arbitration agreement. Absolutely. You bypass it. Under this specific language, which is not good language, is absolutely true under this clause. So before Douglas came down, the magistrate made a sensible ruling. Then Douglas comes down, and you win because the district court applies Douglas. Correct. So you think the district court decision we're reviewing, what it did was just mapped on exactly to Douglas? Absolutely correct, Your Honor. I think we win either way. Either there's no delegation, because this very unusual clause is a conditional delegation. It's only a delegation of cases that don't seek injunctive relief. Do you agree, though, that applying Ninth Circuit, Tenth Circuit law, a bunch of other circuits, you'd lose? No. No? I would not, because I think if you—and believe me, I've read all those cases. If you read those cases very carefully, there is a consistent threat. And the consistent threat is, if it's clear and plain that the clause excludes arbitration, the court should so rule. How does Belknap, the Tenth Circuit case that's quite critical of us and the Sixth Circuit, allow that outcome? They said no. It's who always before what. Now, we're not—that's not us. Well, I guess I would retreat to saying that that's not the Fifth Circuit. But I think—but I don't think Belknap, if you look at all the cases—and I'm struggling to recall the specific facts of Belknap—but my recollection is, again, you had a rather ambiguous clause and a rather ambiguous set of facts to deal with, which is not the plain, clear language here. What about a different way of thinking of it? They're pointing out that, just look at Douglas. The real—this is underneath it all, the holy groundless exception, is a common-sense rule. And therefore, when it's too extraneous from what was discussed, like in that case, the lawyer's account at the bank, utterly unrelated, that's where the exception applies. But here, it is the same course of proceedings. So it isn't a literal plain language analysis, which you're urging, but instead it's a separate test that Douglas is sort of groping towards. Nothing there? I would disagree, Your Honor, respectfully, because I think both cases involve plain language reading. And our case is just as plain as Douglas. And it's just as plain as the TRC environmental case. Similar situation. The contract language is plain. Pardon me, Your Honor. One of the things that strikes me about these things is the desperation with which people seek to flee the courts. I guess I've just been around so long— I could not agree more, Your Honor. That's one of the problems that I have. Finally, I have a case where arbitration is difficult for them. It has nothing to do with this case other than that arbitration is heavily supported by the Congress, and perhaps more significantly, the United States Supreme Court loves it. I agree completely, but everybody comes back to the same thing, because it's a matter of contract. And it's the question of whether the contract itself, in fact, provides that. It's the way they read the contract. They read everything. Frankly, it's open. The policy is for arbitration, and questions are resolved in favor of arbitration. That's a 180-degree flip from where the law was just some few years ago, where the courts were cautious and hostile to arbitration. Now it's a warm love affair. Everyone is warm to arbitration, but everybody says, but that does not mean that you can rewrite the language of the contract or provide something— No, I'm just talking about the environment in which these are being read. A lot of plain language seeks to be so plain in the hands of people who see the outcome of it. In other words, it's now turned the other way into not being clearly arbitral. It is exactly the opposite. Unless it's clearly not arbitral, da-da-da-da-da, then it goes arbitrary. There is this heavy tilt in favor of it, and that's the environment in which we're litigating. I don't personally have a—this is worth that, but that's not my—I'm not—it doesn't matter. I don't make the policy, but that's where we are. And unfortunately, you are having—the carve-out is being read against that strong policy. That's my observation against it, and that's when you're burdened, the real burden. Well, I just think here that the carve-out is written—it precedes delegation, and it is crystal clear. And that, of course, is the nub of our argument. Your argument is you couldn't make something more groundless. You could not. If this isn't it, the Douglas exception doesn't exist. That is exactly my argument, John. But what about—we are looking at this de novo, and all they have to establish is there's some plausible argument. And they've said the primary one is it's plausible to think that the reference to injunctive relief, the carve-out, meant injunctive in support of arbitration. And that's simply a rewrite of the language, Your Honor. That's not an interpretation. That's a rewriting of the language, and that's not proper. And I don't think that is—and this panel, I'm sure, has heard hundreds of contract cases on definite and plain meaning and ambiguity. And to say that this language means what they say it means is to twist the language beyond where it should be twisted. What about Douglas requiring that scope questions as to disputes go to the arbitrator, but scope questions as to injunctive relief go to courts? There is—he cited the Supreme Court Moses decision as to this notion you'd have to bifurcate. What's your answer to that? My answer to that is there clearly are cases—Moses is one of them—that they allow piecemeal litigation because some parties are arbitrable and some parties are not. But I am unaware of a case where someone has broken apart the claims in a case and said we're going to piecemeal that. I don't think that's possible. Well, I agree with that. I think that arbitration—it doesn't make a lot of sense. It's about parties' agreement. And if you didn't follow that path, it would be very, very difficult to administer. Unless there are questions, I'll go on. Thank you. Thank you, counsel. Rubato? Thank you. Just a few brief points as well as obviously happy to answer any questions the panel has. First, just to note, I think that the articulation you just heard from counsel about the holy groundless test really does do exactly what the Kubala case said could not be done, which is to use that exception as a way to kind of assess in a general way, well, does this seem like it's right? The holy groundless exception is narrow, and it really is for cases in which it's so extreme it has effectively nothing to do with the — there is no legitimate connection between the brief— But Kubala — Kubala says in Footnote 1 it wasn't even briefed. It's not relevant here. Kubala has not briefed the Douglas exception. I don't see how you can read Kubala to work against it. Well, because the — certainly the Kubala court raises that issue in that footnote and says quite specifically we have to be careful not to allow this exception to somehow— So if you're right, what is left of the Douglas exception? If — if parties agree to exact language saying exception, parentheses, exception, what's left if this isn't a dispute that's wholly groundless? Any number of cases where the dispute either has really nothing to do with— That's Douglas, and there wasn't even a carve-out. There was no meeting of the minds. It's just we said this looks totally dissimilar. Here the parties have agreed something is not to be sent, and you're saying that's not — Well, because — no, because there is a plausible reading that says what the parties were doing was cutting out action-seeking injunctive relief and allowing damages, which is consistent with the rest of the clause, which is a broad arbitration system. Why isn't that the piecemeal argument that your opposing counsel was just discussing with Judge Higginbotham? It's because— And that would only be parties, not claims. Well, I don't think it would only be parties, not claims. I think that the — you know, the — given, again, the breadth of the clause and given that — let me do this. Let me say that the exception has two parts, and I'm raising this because the language in the two parts of the exception is actually quite different. There is an exception excluding action-seeking injunctive relief, and then an exclusion for disputes relating to intellectual property. Different words are used there. The intellectual property exception is a broad one, okay? It applies to the entire dispute, and it uses the same broad language as the arbitration clause itself by incorporating the same phrase, related to, and by using the term disputes, which is broader than action. What's your best authority for that statement, that disputes is broader than action? What's your best authority for that? I'm not sure I have a specific — But they give substantial authority to the opposite. Well, no. Their authority is about claims versus action, I believe, not disputes versus action. And our view is that the — because a claim encompasses all forms of relief, what this means and what this must be read to mean is that an action-seeking injunctive relief is an action-seeking injunctive relief, not an action-seeking damages injunctive relief. They could, to get to the piecemeal point, they could bring a separate action for injunctive relief. That would be heard by the Court. We wouldn't take the position it couldn't be, but if we did take that position, then the wholly groundless exception might apply. But given that there is a plausible reading, we think the best one, because we think it honors the broad arbitration clause, the presumption in favor of arbitrability and gives meaning to the words of the exception, but at a minimum, as the magistrate judge recognized, a plausible reading, we think we don't get to the wholly groundless exception. I realize we haven't at all discussed the equitable estoppel issue, and if I could just — You've got a whopping 42 seconds to do this. Now 40. So the equitable estoppel issue obviously was not resolved by the district court given the district court's ruling about arbitrability and delegation. We think this court should address it if it — in the event that it chooses to reverse on the delegation or arbitrability rules, and we think it's — rather, rulings, and we think it's a very clear case for the application of equitable estoppel under both of the independent prongs to that. And if the panel has no further questions, I'll — There is one. There is, okay. Qualcomm started the wholly groundless exception. Yes. Are you aware of any cert activity? Because there's a split, a clear split, and now we've been living with it for a while. I'm not aware of any cert activity on that. I don't know. I'm not aware, but I do recognize that there's a split and that there is a substantial number of courts that say recognizing a wholly groundless exception at all cuts against what we should be doing when the parties clearly and unmistakably delegate arbitrability to an arbitrator. Thank you, counsel. Thank you.